**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS

    Plaintiff,

v.

MORALES-KRATZER, INC. d/b/a
EL CALLEJON TAQUERIA & GRILL

    Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C § 2201, Plaintiff, American Hallmark Insurance Company Of Texas ("Hallmark"), files its Complaint for Declaratory Judgment against Defendant, Morales-Kratzer Inc. d/b/a El Callejon Taqueria & Grill ("El Callejon") seeking declaratory relief summarized below, and respectfully shows the following:

### I.
### PARTIES

1.  **Hallmark** is a foreign insurance company incorporated in Oklahoma with its principal place of business in Texas.

2.  **El Callejon** is a company incorporated in New Mexico with its principal place of business in New Mexico and can be served with process through its registered agent, Raul Morales-Garcia at 5904 Camino Azul, Santa Fe, NM 87507.

### II.
### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. Further, this matter involves an

actual case or controversy because the parties dispute whether Defendant's first-party claim is covered by Hallmark's insurance policy.

4. As the alleged loss occurred in the State of New Mexico and as El Callejon is a resident of this judicial district, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### III.
### SUMMARY OF ACTION

5. This is a first-party coverage action concerning El Callejon's claim for various business interruption and food spoilage/contamination coverages under the Commercial Advantage Policy issued by Hallmark arising out of governmental orders restricting the use of El Callejon's dining facilities as part of the larger effort to stem the spread of the COVID-19 virus. As each business interruption coverage agreement requires a "direct physical loss [of] or direct physical damage" to property, and as El Callejon did not report and Hallmark's investigation did not reveal any such loss or damage, El Callejon's business interruption claim is not covered under the policy. Further, because the food spoilage coverage agreement requires contamination by refrigerant or a loss resulting from the loss of electrical power and the food contamination coverage agreement requires contamination of food resulting in an incident of food poisoning, and because no such contamination, causes of loss, or food poisoning incidents were reported, there also is no coverage for El Callejon's food spoilage/contamination claim. Finally, the Policy contains an "Exclusion of Loss Due to Virus or Bacteria (Including Food Contamination Business Income Exception)" endorsement which applies to, and therefore excludes, El Callejon's business interruption and food spoilage claim.[1] Other exclusions also apply in whole or in part to El

---

[1] This exclusion does not apply to a food contamination claim under the "Enhanced Coverages for Food Specialty Shops and Restaurants" endorsement.

Callejon's claim. Hallmark therefore seeks declaratory relief that there is no coverage under its insurance policy for El Callejon's claim.

## IV.
### FACTUAL BACKGROUND

6. On April 28, 2020, El Callejon, through its counsel, made a claim under Hallmark's policy for business interruption losses "related to coronavirus and related civil authority orders." The notice letter stated that the claim was specifically for "business interruption, civil authority, dependent property, and/or extra expenses."

7. On May 12, 2020, Hallmark obtained a recorded statement from Ms. Leann Morales, the owner/operator of El Callejon, with her counsel participating and interjecting answers. Ms. Morales reported that El Callejon had closed on or about March 22, 2020, due to governmental orders issued by the Governor of New Mexico and the Department of Health in response to the COVID-19 pandemic. Ms. Morales reported that the orders allowed restaurants to continue providing take-out and delivery services but that the nature of the food that El Callejon offered was not "suitable" for such services. As a result of the closure, Ms. Morales reported that El Callejon sustained lost business income and food spoilage, and she projected that it would incur additional expenses to clean and sanitize the restaurant. Ms. Morales reported that neither El Callejon nor any neighboring properties had sustained any known direct contact or contamination by the COVID-19 virus and that no employees of El Callejon had been diagnosed with the COVID-19 virus. She also advised Hallmark that El Callejon's closure was not the result of any disruption of services by any other business that serviced El Callejon.

8. On June 29, 2020, Hallmark issued El Callejon a declination letter, advising El Callejon that its business interruption and food spoilage/contamination claim did not fall within the scope of the coverage agreements and was also excluded.

## V.
## THE HALLMARK POLICY

9. Hallmark issued Commercial Advantage Policy No. 44-PB-000502082-03 to El Callejon for the policy period of September 26, 2019 to September 26, 2020 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A** and fully incorporated herein by reference. The relevant coverage agreements, provisions, and exclusions under the Policy state as follows:

> **A.** **Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> \* \* \*
>
> **3.** **Covered Causes Of Loss**
>
> Risks of direct physical loss unless the loss is:
>
> **a.** Excluded in Paragraph **B. Exclusions** of **SECTION I PROPERTY**; or
>
> **b.** Limited in Paragraph **A.4. Limitations** of **SECTION I - PROPERTY**.
>
> \* \* \*
>
> **5.** **Additional Coverages**
>
> \* \* \*
>
> **b.** **Business Income**
>
> **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss in the open or personal property in a vehicle, the described

premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage.

**(3)** Business Income means the:

**(a)** Net income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(b)** Continuing normal operating expenses incurred, including ordinary payroll.

**(4)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

5

**(5)** Ordinary Payroll Expenses:

**(a)** Mean payroll expenses for all your employees except:

**(i)** Officers;

**(ii)** Executives;

**(iii)** Department Managers; and

**(iv)** Employees under contract.

**(b)** Include:

**(i)** Payroll;

**(ii)** Employee benefits, if directly related to payroll;

**(iii)** FICA payments you pay;

**(iv)** Union dues you pay; and

**(v)** Workers compensation premiums.

**c.** **Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss. However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced. The most we will pay under this Additional Coverage is $10,000 in any one occurrence.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

6

      **(a)**    Source of materials; or

      **(b)**    Outlet for your products.

**(3)**    If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)**    Dependent property means property owned by others whom you depend on to:

      **(a)**    Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

      **(b)**    Accept your products or services;

      **(c)**    Manufacture your products for delivery to your customers under contract of sale; or

      **(d)**    Attract customers to your business. The dependent property must be located in the coverage territory of this policy.

**(5)**    The coverage period for Business Income under this Additional Coverage:

      **(a)**    Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

      **(b)**    Ends:

            **(i)**    On the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

            **(ii)**    Within 30 days,

      whichever is less.

   **(6)** The Business Income coverage period as stated in Paragraph **(5)** above does not include any increased period required due to the enforcement of any ordinance or law that:

     **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

     **(b)** Requires any insured or others to test for, monitor, clean up, remove, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not reduce the Business Income coverage period.

   **(7)** The definition of Business Income contained in **Additional Coverage–Business Income** also applies to this Additional Coverage.

 **d.** **Civil Authority**

  We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur, caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

  The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to four consecutive weeks after that coverage begins.

  The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

   **(1)** Four consecutive weeks after the date of that action; or

   **(2)** When your Civil Authority coverage for Business Income ends;

  whichever is later.

  The definitions of Business Income and Extra Expense contained in the **Additional Coverages- Business Income** and **Extra Expense** also apply to this **Additional Coverage – Civil Authority**.

* * *

**i.    Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement properties or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations:

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records" to the extent it reduces the

                        amount of loss that otherwise would have been payable under this Additional Coverage or Additional **Coverage b. Business Income.**

       **(3)**    With respect to the coverage provided in this Additional Coverage, suspension means:

           **(a)**    The partial showdown or complete cessation of your business activities; or

           **(b)**    That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

       **(4)**    We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of **SECTION I – PROPERTY.**

                                         * * *

**6.**    **Coverage Extensions**

In addition to the Limits of Insurance of **SECTION I - PROPERTY**, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Coverage Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

…

**h.**    **Spoilage**

       **(1)**    We will pay for loss or damage to Business Personal Property that is "perishable stock" within the described premises caused by:

           **(a)**    Contamination by refrigerant; or

           **(b)**    Change in temperature or humidity resulting from complete or partial interruption of electrical power due to conditions beyond your control.

           The most we will pay for this Coverage Extension is $15,000. If additional coverage is purchased, the total Limit of Insurance will be the amount shown on the Declarations.

  **(2)** We will not pay under this Coverage Extension for loss caused by or resulting from:

   **(a)** Disconnecting any refrigerating, cooling or humidity control system from its power source, except when done to avoid or reduce another loss covered by this policy;

   **(b)** Deactivating electrical power due to the manipulation of any switch or other device used to control the flow of electrical current;

   **(c)** The inability of a utility company or other power source to provide sufficient power due to:

    **(i)** Lack of fuel; or

    **(ii)** Governmental order;

   **(d)** The inability of a power source at the described premises to provide sufficient power due to a lack of generating capacity to meet demand; or

   **(e)** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

    \* \* \*

**B.** **Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . .

  **b.** **Consequential Losses**

   Delay, loss of use or loss of market.

    \* \* \*

**3.** We will not pay loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is

listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.    Act or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

\* \* \*

**5.    Business Income and Extra Expense Exclusions**

**a.**    We will not pay for:

**(1)**    Any Extra Expense or increase of Business Income loss, caused by or resulting from:

**(a)**    Delay in rebuilding, repairing or replacing the property or resulting "operations" due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)**    Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

**(2)**    Any other consequential loss. [. . .]

\* \* \*

**G.    Property Definitions**

\* \* \*

**10.**    "Operations" means your business activities occurring at the described premises.

**11.**    "Period of Restoration":

**a.**    Means the period of time that:

**(1)**    Begins:

**(a)**    72 hours after the time of direct physical loss or damage for Business Income Coverage; or

12

      **(b)**    Immediately after the time of direct physical loss of for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premise; and

  **b.**  Does not include any increased period required due to the enforcement of any ordinance or law that:

    **(1)**  Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(2)**  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration of this policy will not cut short the "period of restoration".

\* \* \*

## ENHANCED COVERAGES FOR FOOD SPECIALTY SHOPS AND RESTAURANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL ADVANTAGE POLICY

**A.**  **Section I – Property** is amended as follows:

  **1.**  The following are added under **A.5. Additional Coverages:**

    **y.**  **Food Contamination**

      **(1)**  If your business at the described premises is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination, we will pay the following:

        **(a)**  Extra Expense:

          **(i)**  The cost to clean your equipment as required by the Board of Health or any other governmental authority;

          **(ii)**  The cost to replace food which is, or is suspected to be, contaminated; and

13

    **(iii)** The cost of necessary medical tests or vaccinations for your employees; and

  **(b)** Business Income Expense:

    **(i)** The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations"; and

    **(ii)** The cost of additional advertising to restore your reputation.

  The coverage for Business Income and the cost of additional advertising will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority and will apply for a period of up to 90 consecutive days after such coverage begins.

**(2)** Food contamination means an incidence of food poisoning to one or more of your patrons as a result of:

  **(a)** Tainted food you purchased;

  **(b)** Food which has been improperly stored, handled or prepared; or

  **(c)** A communicable disease transmitted through one or more of your employees.

**(3)** Business Income has the same meaning given in **Additional Coverage b. Business Income.**

**(4)** The most we will pay under this Additional Coverage is:

  **(a)** $10,000 in any one occurrence and $20,000 in any one policy period for Extra Expense; and

  **(b)** $50,000 in any one occurrence and $100,000 in any one policy period for Business Income.

**(5)** We will not pay any fines or penalties levied against you by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination at the described premises.

\* \* \*

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
## (INCLUDING FOOD CONTAMINATION BUSINESS INCOME EXCEPTION)

This endorsement modifies insurance provided under the following:

COMMERCIAL ADVANTAGE POLICY

The following provisions apply to **Section I – Property:**

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section I – Property** in all forms and endorsements that comprise this Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

**1.** Loss or damage caused by or resulting from "fungi," wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Policy; or

**2.** Coverage otherwise provided under the Food Contamination Additional Coverage in Enhanced Coverages for Food Specialty Shops **CBP 005** (if that endorsement is attached to this Policy).

\* \* \*

10. Under the express terms of the Policy, for "Business Income" coverage to apply under Section I.A.5.b., the suspension of the insured's operations must be caused by "direct physical loss of or damage" to the insured premises "caused by or resulting from a Covered Cause of Loss." Similarly, for "Extra Expense" coverage to apply under Section I.A.5.i., the insured premises must have sustained "direct physical loss of or damage" and the insured's loss must be "caused by or result from a Covered Cause of Loss." For "Business Income from Dependent Properties" coverage to apply under Section I.A.5.c., the insured's loss must be due to "direct physical loss or damage" at the premises of a "dependent property caused by or resulting from any

15

Covered Cause of Loss." For "Civil Authority" coverage to apply under Section I.A.5.d, the insured's loss must be "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

11. El Callejon has not reported, and Hallmark's investigation did not reveal, any "direct physical loss of or damage" to the insured premises caused by a Covered Cause of Loss. Therefore, the Business Income and Extra Expense coverages do not apply. El Callejon has not reported, and Hallmark's investigation did not reveal, any "direct physical loss or damage" at the premises of a dependent property caused by a Covered Cause of Loss. El Callejon has also denied that its business closed due to the interruption of service from any dependent property. Therefore, the Dependent Property coverage does not apply. Finally, El Callejon has not reported, and Hallmark's investigation did not reveal, any civil authority order issued "due to" "direct physical loss of or damage" to any other property caused by or resulting from any Covered Cause of Loss. Therefore, the Civil Authority coverage does not apply.

12. For "Spoilage" coverage to apply under Section I.A.6.h., the insured's loss or damage must be caused by "[c]ontamination by refrigerant" or "[c]hange in temperature or humidity resulting from complete or partial interruption of electrical power due to conditions beyond [the insured's] control." As El Callejon is alleging its spoilage resulted from the closure of its business due to governmental orders issued to prevent the spread of the COVID-19 virus, this coverage does not apply.

13. For "Food Contamination" coverage to apply under the "Enhanced Coverages for Food Specialty Shops and Restaurants" endorsement, the insured's business must be closed by governmental order as the result of the discovery or suspicion of "food contamination" which is

16

defined as "an incidence of food poisoning" to one or more of the insured's customers resulting from "[t]ainted food," "[f]ood which has been improperly stored, handled or prepared," or "[a] communicable disease transmitted through one or more of [the insured's] employees." As El Callejon has not reported any incidence of food poisoning resulting from any one of the listed causes, this coverage does not apply.

14. Additionally, under the endorsement entitled "Exclusion of Loss Due to Virus or Bacteria (Including Food Contamination Business Income Exception)" (the "Virus Exclusion") the Policy excludes coverage "for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." El Callejon again reported that its loss and expenses resulted from governmental orders issued to prevent the spread of the COVID-19 virus. Therefore, El Callejon's claim for Business Income, Extra Expense, Dependent Property, Civil Authority, and Food Spoilage coverage is excluded.

15. Finally, other exclusions appear to apply in whole or in part to El Callejon's claim, including, but not limited to, the "Consequential Losses" exclusion under Section I.B.1.b., the "Acts or Decisions" exclusion under Section I.B.3.a., and the "Business Income and Extra Expense Exclusions" under Section I.B.5.a.

**VI.**
**CAUSE OF ACTION: DECLARATORY JUDGMENT**

16. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C § 2201, Hallmark seeks a declaratory judgment resolving all issues in this insurance coverage dispute and declaring the parties' respective rights and obligations with respect to all matters in controversy. Among other things, Hallmark seeks declarations that:

  a. El Callejon's claim does not fall within the scope of the coverage agreements under the Business Income, Extra Expense, Dependent

17

    Property, Civil Authority, Spoilage, and Food Contamination sections of the Policy.

b. El Callejon's claim for Business Income, Extra Expense, Dependent Property, Civil Authority, and/or Spoilage is excluded by the Virus Exclusion.

c. El Callejon's claim is subject to the Consequential Losses, Acts or Decisions, and Business Income and Extra Expense exclusions.

d. Such other and further declarations as may be just and necessary to resolve all justiciable disputes between and/or among the parties.

## VII.
### PRAYER

**WHEREFORE**, Plaintiff American Hallmark Insurance Company Of Texas prays that Defendant be cited to appear and answer herein, and upon final hearing and trial that Hallmark have and recover a final judgment declaring all rights and obligations between and among the parties as requested above and also as may be just and necessary to resolve all matters in dispute between and among the parties regarding this insurance coverage dispute; and that Hallmark have and recover such other and further relief as may be just and necessary.

    Respectfully Submitted,

    **ALLEN LAW FIRM, LLC**


    /s/Meena H. Allen
    MEENA H. ALLEN
    6121 Indian School Road Ne, Ste. 230
    Albuquerque, NM 87110
    (505) 298-9400
    mallen@mallen-law.com

    *Attorneys For American Hallmark Insurance Company Of Texas*