# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

AMERICAN HALLMARK INSURANCE
COMPANY OF TEXAS,

       Plaintiff,

v.                                          No. CIV 20-0987 RB/JHR

MORALES-KRATZER, INC. d/b/a EL
CALLEJON TAQUERIA AND GRILL,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

American Hallmark Insurance Company of Texas (Hallmark) filed a declaratory judgment action seeking a declaration on whether a Commercial Advantage Policy it issued to Morales-Kratzer, Inc. d/b/a El Callejon Taqueria and Grill (El Callejon) requires Hallmark to compensate El Callejon for losses the restaurant sustained due to government orders related to the COVID-19 pandemic. Hallmark has already denied El Callejon's claim, and El Callejon has neither filed suit nor expressed a present intention to file suit on the denied claim. El Callejon has moved to dismiss on the basis that the Court does not have subject matter jurisdiction as there is no actual controversy between the parties. Having considered the parties' arguments and the relevant law, the Court finds the motion to dismiss should be **GRANTED**.

## I.    Factual Background[1]

Hallmark is an "insurance company incorporated in Oklahoma with its principal place of business in Texas." (Docs. 1 (Compl.) ¶ 1.) El Callejon is a New Mexico company operating a

---

[1] The Court recites the facts relevant to this motion as they are derived from the Complaint (Doc. 1 (Compl.)) and the exhibits attached thereto.

restaurant in Santa Fe. (*Id.* ¶¶ 2, 7; Doc. 10 at 2.[2]) Hallmark issued a Commercial Advantage Policy to El Callejon effective September 26, 2019, through September 26, 2020. (*See* Compl. ¶ 5; Doc. 1-1 at 7.)

On April 28, 2020, El Callejon made a claim under the Policy for "business interruption losses related to coronavirus and related civil authority orders." (Compl. ¶ 6 (quotation marks omitted).) El Callejon claimed that governmental orders issued in response to the pandemic forced the restaurant to close, causing lost business income, food spoilage, and related expenses. (*Id.* ¶ 7.) Hallmark denied the claim on June 29, 2020, stating that the claimed business interruption and food spoilage/contamination "did not fall within the scope of the coverage agreements" and was excluded. (*Id.* ¶¶ 8–9.)

On September 25, 2020, Hallmark filed a declaratory judgment action in this Court, seeking a declaration regarding "the parties' respective rights and obligations with respect to" El Callejon's claim of loss. (*Id.* ¶ 16.) El Callejon argues that there is no justiciable controversy between the parties and moves to dismiss the action for lack of subject matter jurisdiction. (*See* Doc. 10 at 5–7.)

## II.     Legal Standards

In resolving El Callejon's motion to dismiss, "the Court will take the well-pleaded allegations of the Complaint as true, and it will not consider materials outside of the pleadings other than those necessary to resolve jurisdictional facts or those referenced in the Complaint and central to" the declaratory judgment action. *Sierra Vista Hosp. v. Barton & Assocs., Inc.*, No. 17-CV-367 JAP/GJF, 2017 WL 3017169, at *2 (D.N.M. July 13, 2017) (citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (in resolving a motion to dismiss, district courts may properly

---

[2] The Court refers to the motion's internal pagination, rather than to the CM/ECF pagination. (*See* Doc. 10.)

consider documents referred to in the complaint and central to the plaintiff's claim, and may take judicial notice of adjudicative facts); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (when jurisdictional facts are challenged, the district court may consider materials outside the pleadings without converting the motion to one for summary judgment)).

Where, as here, the Court exercises diversity jurisdiction, it "applies federal procedural law and state substantive law . . . ." *Id.* (citing *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011)). "Because a declaratory judgment statute provides only a procedural remedy and does not create any substantive right, the federal Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, controls this action." *Id.* (citing *All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)). The Tenth Circuit has explained that the Declaratory Judgement Act "presents two separate hurdles for parties seeking a declaratory judgment to overcome." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citation omitted). "First, a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Id.* (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)) (subsequent citations omitted). Second, where an actual controversy exists, district courts are not *required* to declare the parties' rights, but instead "are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Id.* (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 1994)) (subsequent citations omitted).

## III. Hallmark has not alleged facts sufficient to show an actual controversy.

El Callejon moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that Hallmark has not alleged an actual controversy and, thus, the Court does not have subject

matter jurisdiction.[3] (*See* Doc. 10 at 1.) El Callejon contends that because it has not pursued its denied claim of loss and "has no present intention to do so[,]" any alleged controversy between the parties is not ripe for the Court's review. (*See id.* at 9.) Hallmark argues that because "El Callejon refuses to release its claim," the "threat of future suit" continues to loom over Hallmark, making this matter ripe for adjudication. (*See* Doc. 14 at 1, 5.)

"[T]he phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III of the United States Constitution." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (quoting *MedImmune*, 549 U.S. at 127) (quotation marks omitted). In other words, the Court may not issue an advisory opinion in a suit brought under the DJA. *See id.* "The question comes down to 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune*, 549 U.S. at 127). "These parameters, though helpful, 'do not draw the brightest of lines,' *see* [*Medimmune*, 549 U.S.] at 127, and courts considering claims that seek declaratory relief often struggle with 'the difficult task of distinguishing between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies,'" *Hot Springs Land Dev., LLC v. City of Truth or Consequences*, No. CV 13-0736 WPL/LAM, 2014 WL 12605652, at *5 (D.N.M. June 19, 2014) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111 n.12 (10th Cir. 2010)).

In *Columbian Financial*, "the Tenth Circuit helpfully engaged in a detailed review of Supreme Court decisions examining the breadth and limits of declaratory-judgment justiciability." *Id.* (citing *Columbian Fin.*, 650 F.3d at 1377–82). "As the court recognized, the key question in

---

[3] Hallmark misses the mark in its response, arguing that it has stated a claim under Rule 12(b)(6). (*See* Doc. 14 at 2.)

many cases is whether the issue in question is 'presented in the context of a specific live grievance'—that is, whether the issue 'arises in a specific dispute having real-world consequences.'" *Id.* (quoting *Columbian Fin.*, 650 F.3d at 1378, 1379). The Tenth Circuit began with *Aetna*, the United States Supreme Court's first decision "under the [DJA] and, appropriately, one involving an insurance policy . . . ." *Columbian Fin.*, 650 F.3d at 1377. In that case, Aetna issued Haworth five life insurance policies, which provided benefits upon proof of disability or death. *See Aetna*, 300 U.S. at 237. Haworth made claims on the policies, "contending that he had become disabled and that his disability had both relieved him of the obligation to pay premiums and entitled him to receive disability payments. Aetna rejected the claims." *Columbian Fin.*, 650 F.3d at 1377 (discussing *Aetna*, 300 U.S. at 237–39). "But instead of Haworth's bringing suit to challenge Aetna's rejection, Aetna filed an action for a declaratory judgment that Haworth was not disabled and that his policies had therefore lapsed for nonpayment." *See id.* The Supreme Court found that there was jurisdiction to hear the matter, because "the parties had adopted 'adverse positions with respect to their *existing* obligations.'" *Id.* (quoting *Aetna*, 300 U.S. at 242). The Court recognized that without a judicial resolution, Aetna was in danger of losing relevant "evidence through disappearance, illness, or death of witnesses[,]" and without "a judicial decision with respect to the alleged disability, [Aetna would] be compelled to maintain reserves in excess of $20,000" with respect to the insurance policies. *Aetna*, 300 U.S. at 239. Thus, the controversy was real and immediate. Hallmark has not alleged facts to show real and immediate consequences, such as a requirement to maintain reserves based on El Callejon's denied claim. Rather, it simply seeks a judicial declaration that affirms its denial of El Callejon's claim. (*See* Compl. at 17–18.)

Hallmark argues that because El Callejon has declined to relinquish any right to sue based on Hallmark's denial of the claim, there is a real controversy. (*See* Doc. 14 at 4–5.) In support of

its position, Hallmark relies on two cases: *American Family Mutual Insurance Co. v. Bowser*, 779 P.2d 1376 (Colo. App. 1989), and *Medimmune*, 549 U.S. at 128. *Bowser* is inapposite, as it involved a dispute analyzed under Colorado's Uniform Declaratory Judgments Law, Colo. Stat. § 13-51-101, rather than the federal DJA. *MedImmune* requires more discussion.

"In *Medimmune*, a patent licensee, who had continued to pay royalties for use of the patent, brought a declaratory-judgment action against the patent holder to determine whether the patent was invalid or unenforceable." *Columbian Fin.*, 650 F.3d at 1377 (discussing *MedImmune*, 549 U.S. at 121–25). "What appeared to be missing in the case was the requisite immediacy—there was little likelihood that the patent holder would ever bring suit against the licensee, because the licensee was continuing to pay royalties." *See id.* "Nevertheless, the Supreme Court held that there was an actual case or controversy because the licensee's payment of royalties was 'coerced' by the looming threat of the licensee's having to pay treble damages if it halted payments and the patent was ultimately upheld. Avoidance of such dilemmas 'was the very purpose of the [DJA].'" *See id.* (quoting *MedImmune*, 549 U.S. at 129). Again, however, Hallmark fails to point to any "coercion" or consequences that will occur if the Court fails to render a declaration here.

Hallmark points out that El Callejon *could* sue, and that the possibility of litigation is sufficient to show the presence of an actual controversy.[4] Under this logic, any time an insurance company denies an insured's claim, the company may immediately file a declaratory judgment action in federal court, assuming diversity jurisdiction exists. Hallmark cites no authority to support such a conclusion, and the Court disagrees that the mere fact of a denial, without more, is

---

[4] Hallmark asserts that the question of whether it should cover such COVID-related claims is important to "other similarly situated commercial property policies . . . ." (Doc. 14 at 5.) Such a finding would not, however, resolve a dispute with consequences to the parties before the Court in this matter. *See Columbian Fin.*, 650 F.3d at 1376 ("It is not the role of federal courts to resolve abstract issues of law[,]" but "to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties.").

sufficient to constitute an actual controversy. It is true that "[a]n actual controversy does not require an actual lawsuit." *Sierra Vista*, 2017 WL 3017169, at *2. Rather, a determination of whether there is an actual controversy "focuse[s] on the underlying facts, assessing whether they suggest an extant controversy between the parties or whether instead they merely call on [the court] to supply an advisory opinion about a hypothetical dispute." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1242 (10th Cir. 2008). In *Surefoot*, for example, the similarly named companies were involved in a trademark dispute for years that had never blossomed into a lawsuit, although the defendant had threatened litigation several times. *See id.* at 1238. Relying on *MedImmune*, the Tenth Circuit found that there was an actual controversy, because the underlying facts showed that the parties had extensive and definite adverse legal positions. *See id.* at 1247.

In *Sierra Vista*, the defendant accused the plaintiff hospital of breaching the parties' contract. *See* 2017 WL 3017169, at *1. In a communication to the plaintiff, the defendant stated that it "prefer[red] to resolve the issue without litigation, [but] it threatened to bring suit . . . if [the] negotiations were unsuccessful." *Id.* Without waiting for the defendant to file a lawsuit, the plaintiff filed a complaint under the DJA to obtain a declaration on the pending legal questions. *See id.* The defendant argued that the case was not ripe, because neither party had filed a lawsuit. *See id.* The court disagreed, finding that "[w]hile a lawsuit between the parties . . . may be hypothetical, the dispute is not . . . ." *Id.* at *2. It held that "[t]he parties clearly have adverse legal interests in an actual dispute arising out of specific facts, and the resolution of the controversy will have practical consequences as to the parties' negotiations and business relations even if [the d]efendant does not file suit." *Id.* (citing *Columbian Fin.*, 650 F.3d at 1376); *see also, e.g.*, *Mut. of Omaha Ins. Co. v. Rodriguez*, No. 09-2100-EFM, 2009 WL 3672513, at *2 (D. Kan. Nov. 2, 2009) (where insurer and insured disagreed about coverage and insurer threatened litigation, court found

that a substantial controversy existed adequate to exercise subject matter jurisdiction); *Assoc. Indus. Ins. Co. v. Hoskins*, No. CIV-20-283-G, 2021 WL 951752, at *3 (W.D. Okla. Mar. 12, 2021) (noting that "Plaintiff would not necessarily need to wait for Defendants to initiate litigation regarding [a disputed] Judgment, but for Plaintiff's claim to be ripe there must be factual allegations that show a 'live controversy' between the parties 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'"). Here, Hallmark does not allege that there is a live controversy between the parties regarding the denial of El Callejon's claim. (*See* Compl.)

In sum, Hallmark has not pled any facts to establish that there is an actual and immediate controversy sufficient to warrant the Court's exercise of jurisdiction. Accordingly, the Court finds El Callejon's motion to dismiss should be granted. The Court will dismiss the Complaint without prejudice.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 10) is **GRANTED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE